STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-27


MATTHEW WAYNE MCCAULEY

VERSUS

ROWENA BAUTISTA MCCAULEY


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-235
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and Phyllis M.
Keaty, Judges.


**AFFIRMED.**

Brad Guillory
Erin F. Hargrave
940 Ryan Street
Lake Charles, Louisiana  70601
(337) 433-5297
Counsel for Defendant/Appellant:
        Matthew Wayne McCauley

Rowena Bautista McCauley
In Proper Person
2709 Laura Lane
Lake Charles, Louisiana  70605
Plaintiff/Appellee

**KEATY, Judge.**

Defendant/Appellant appeals the trial court's judgment in favor of Plaintiff/Appellee. For the following reasons, the trial court's judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

This matter stems from a protective order involving Plaintiff/Appellee, Rowena Bautista McCauley (hereinafter "Rowena"), and Defendant/Appellant, Matthew Wayne McCauley (hereinafter "Matthew"). Matthew and Rowena, who is from the Philippines, were married on April 7, 2017 in Lake Charles, Louisiana. The married couple, along with Rowena's daughter from a previous relationship, resided in a house located at 2709 Laura Lane in Lake Charles. No children were born during the parties' marriage, and Matthew never adopted Rowena's daughter. On January 15, 2019, Matthew filed a Petition for Divorce. Thereafter, Rowena and her daughter moved out of the house for a short time and then returned and lived with Matthew. On May 28, 2019, Rowena filed an Answer to Petition for Divorce and Reconventional Demand for Dismissal and alleged that the parties had reconciled.

On May 29, 2019, Rowena, individually and on behalf of her daughter, filed a Petition for Protection from Abuse against Matthew. In her petition, Rowena alleged Matthew abused her on three different occasions. She further sought an ex parte temporary restraining order prohibiting Matthew from going within one hundred yards of their home located at 2709 Laura Lane, which she alleged was "solely owned or leased by [her]." Rowena requested sole use of the residence and sought Matthew's eviction. The temporary restraining order was granted on May 29, 2019, at which time Matthew was evicted. On June 3, 2019, Rowena filed a First Supplemental and Amending Petition for Protective Order to amend her previous assertion that she "solely owned or leased" the home at 2709 Laura Lane. Rowena

explained therein that her initial allegation was the result of a typographical error and that she does not contest the fact that the house is Matthew's separate property.

On June 12, 2019, Matthew filed a Rule to Dissolve Temporary Restraining Order based, in part, upon Rowena's false allegation in her original petition that she solely owned the marital home. On that same day, trial was scheduled to begin on Rowena's petition and temporary restraining order. At the beginning of trial on June 13, 2019, the trial court first addressed and denied Matthew's recently filed rule to dissolve the temporary restraining order because it was not served on opposing counsel. Thereafter, trial proceeded with respect to Rowena's petition. During the two-day trial, evidence was presented and arguments were heard, after which the trial court granted Rowena's petition. The protective order, which was signed on June 14, 2019, is effective through 11:59 p.m. on December 14, 2020.[1] Rowena was awarded the exclusive use of the residence for the duration of the protective order. Pursuant to a subsequent written judgment dated August 26, 2019, the trial court granted Rowena attorney fees in the amount of $15,500.00.

Matthew appealed. On appeal, Matthew asserts the following assignments of error:

1.  The trial court committed error by refusing to consider and denying without a hearing the "*Motion to Dissolve Temporary Restraining Order*" filed by Matthew when the initial temporary restraining order was improperly granted based upon false factual information contained in the application and attached exhibits.

2.  The trial court committed error and abused its discretion by allowing the introduction of improper evidence at trial.

3.  The trial court committed error in granting the protective order based upon the incidents enumerated in the petitioner's application.

---

[1] We note that page six of the protective order states that it is effective through 11:59 p.m. on December 13, 2020 whereas page one states that it is effective through 11:59 p.m. on December 14, 2020. For clarity, we will use December 14, 2020 as the date when the protective order expires.

4. The trial court committed error and abused its discretion by awarding Rowena the exclusive use of Matthew's separate property residence for an eighteen (18) month period pursuant to the granting of the protective order.

5. The trial court committed error by awarding attorney fees to Rowena in this matter. Alternatively, the trial court committed error by awarding an unreasonably high amount of attorney fees.

Rowena has not answered the appeal nor filed an appellate brief in response.

## STANDARD OF REVIEW

The applicable standard of review is discussed in *Ruiz v. Ruiz*, 05-175, p. 4 (La.App. 5 Cir. 7/26/05), 910 So.2d 443, 445 (citation omitted), as follows:

> In cases decided pursuant to the Domestic Abuse Assistance statute, a trial court's order is reversible only upon a showing of an abuse of discretion. Further, the trial court sitting as the trier of fact is in the best position to evaluate the demeanor of the witnesses and its credibility determinations will not be disturbed by this Court absent manifest error.

The supreme court in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted), further explained:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

## DISCUSSION

### I. First Assignment of Error

In his first assignment of error, Matthew contends the trial court committed error by refusing to consider and denying without a hearing his Motion to Dissolve

Temporary Restraining Order when the initial temporary restraining order was improperly granted based upon false factual information contained in the application and attached exhibits. Matthew notes the relief granted upon the issuance of a temporary restraining order found in La.R.S. 46:2135(3), which gives "possession to the petitioner of the residence or household to the exclusion of the defendant, by evicting the defendant or restoring possession to the petitioner" when one of three requirements are satisfied. The three requirements found in La.R.S. 46:2135(3) provide:

> (a)    The residence is jointly owned in equal proportion or leased by the defendant and the petitioner or the person on whose behalf the petition is brought;

> (b)    The residence is solely owned by the petitioner or the person on whose behalf the petition is brought; or

> (c)    The residence is solely leased by defendant and defendant has a duty to support the petitioner or the person on whose behalf the petition is brought.

Matthew claims the requirement in La.R.S. 46:2135(3)(b) was not satisfied because the marital home is solely owned by him rather than Rowena. Thus, he contends that Rowena should not have been granted exclusive use of the home, his eviction was unlawful, and the portion of the temporary restraining order with respect to his eviction should have been dissolved.

On review, Rowena's petition shows that she requested Matthew's eviction based upon her allegation that the residence was "solely owned or leased by [her]" in accordance with La.R.S. 46:2135(3)(b). She subsequently changed her allegation as the sole owner/lessor and asserted Matthew as the sole owner in her supplemental and amending petition. The evidence in the record, therefore, shows Rowena did not satisfy the requirement found in La.R.S. 46:2135(3)(b).

4

However, La.R.S. 46:2135(3) does not govern our review of Matthew's assigned error on appeal, in which he claims that the trial court erred by refusing to consider and denying, without a hearing, his motion to dissolve. Moreover, our reading of the record on review reveals that the trial court did not actually deny Matthew's motion to dissolve without a hearing; rather, it denied Matthew's *request to hear* his motion to dissolve because it was not properly served on opposing counsel. Thus, we must determine whether the trial court erred by refusing to hear Matthew's motion based upon La.Code Civ.P. art. 3607, which provides:

> An interested person may move for the dissolution or modification of a temporary restraining order or preliminary injunction, upon two days' notice to the adverse party, or such shorter notice as the court may prescribe. The court shall proceed to hear and determine the motion as expeditiously as the ends of justice may require.
>
> The court, on its own motion and upon notice to all parties and after hearing, may dissolve or modify a temporary restraining order or preliminary injunction.

On review, the record shows that Matthew's motion to dissolve was not served "upon two days' notice to the adverse party" as required by La.Code Civ.P. art. 3607. Accordingly, we cannot say that the trial court erred in this regard, and Matthew's assignment of error is without merit.

## II. Second Assignment of Error

In his second assignment of error, Matthew contends the trial court committed error and abused its discretion by allowing the introduction of improper evidence at trial.

### A. February 23, 2019

Matthew points to Rowena's testimony that on February 23, 2019, Matthew pushed her out of the bedroom using both of his hands. Matthew claims this testimony was improperly allowed into evidence despite his objection because it was not specifically asserted in her petition. In support, he cites *Bosworth v. New*

*Orleans Federal Savings & Loan Ass'n*, 258 So.2d 191, 194 (La.App. 4 Cir. 1972), wherein the fourth circuit noted that "[p]roof intended to broaden or go beyond the pleadings is inadmissible if objected to."

In *Bettevy v. Bettevy*, 19-327, pp. 4-5 (La.App. 3 Cir. 11/6/19), 283 So.3d 1047, 1050 (quoting *Fontenot v. Newcomer*, 10-1530, 10-1531 (La.App. 3 Cir. 5/4/11), 63 So.3d 1149), this court discussed the requirement of a party seeking a protective order under the Domestic Abuse Assistance Act, La.R.S. 46:2131-2140, to specify the allegations of abuse in the petition, as follows:

> The purpose behind the entire legislative scheme in Louisiana Revised Statutes 46:2131, *et seq.*, is to provide relief to victims of domestic violence by establishing "a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." LSA-R.S. 46:2131; *Bays v. Bays*, 00-1727, p. 5 (La. 2/21/01), 779 So.2d 754, 758. [Louisiana Revised Statutes] 46:2136 permits a court to grant a protective order to prevent the possibility of family violence, provided a petition is filed requesting the order and the defendant is afforded reasonable notice consistent with due process. *Wise v. Wise*, 02-574, p. 2 (La.App. 5 Cir. 11/13/02), 833 So.2d 393, 394. The petition must detail the facts and circumstances concerning the alleged abuse. LSA-R.S. 46:2134. By requiring the party seeking a protective order to file a petition specifying the allegations of abuse, the legislature has ensured that a defendant's constitutional due process rights, particularly the right of reasonable notice, will be observed. *Bays*, p. 6, 779 So.2d at 758; *Branstetter v. Purohit*, 06-1435, p. 5 (La.App. 4 Cir. 5/2/07), 958 So.2d 740, 743.

In *Bettevy*, 283 So.3d 1047, the former husband, James, appealed the trial court's judgment granting a permanent order of protection in favor of his former spouse, Erica. James sought to dismiss Erica's petition for lack of specificity concerning her allegations of abuse, claiming Erica's petition failed to allege a date when the incident occurred or a specific location where the incident took place. The appellate court noted that Erica's petition alleged the following: the incident occurred in Oakdale when James pulled a gun on her and threatened her, a witness came upon the scene and called 911, and James was arrested. The appellate court affirmed the trial court's judgment and held that there were "enough details in the

petition to put James on notice as to what incident was involved." *Id*. at 1050. According to the appellate court, there was no doubt that James knew "exactly what incident was at issue" such that the trial court did not err in failing to dismiss the petition for lack of specificity.

On review in this matter, Rowena's petition fails to allege an incident occurred on February 23, 2019. Her petition, however, asserts three other dates when the alleged domestic abuse occurred. According to the petition, the three alleged incidents all occurred in Lake Charles at the home on Laura Lane from February through May 2019. Similarly, the February 23, 2019 incident also occurred at the marital home. The trial court allowed Rowena to testify regarding the February 23, 2019 incident over Matthew's counsel's objection. Matthew's counsel, however, was able to cross-examine Rowena regarding her testimony. Moreover, testimony in the record reveals that Rowena left the marital home on February 23, 2019. Matthew also testified at trial regarding the February 23, 2019 incident. Thus, we find that the trial court did not abuse its discretion in allowing the testimony because it could have found that there were enough details in the petition to put Matthew on notice, just as in *Bettevy*, 283 So.3d 1047. This assignment of error is meritless.

**B.      Suit Record from Docket Number 2019-0235**

At trial, Rowena's counsel introduced into evidence a copy of another suit filed against Matthew as an exhibit attached to Rowena's petition. Rowena's counsel claimed the introduction of this suit into evidence was to show that Matthew has engaged in a pattern of abuse. Rowena's counsel noted that the present hearing was not for the purpose of obtaining the truth of the matter from the former suit and that the trial court can give the document "however much weight" as it finds.

Matthew's counsel timely objected to the introduction of the entire suit record. Matthew's counsel argued that the former suit was attached to Rowena's petition in

order to give the judge signing the temporary restraining order the impression that Matthew was a questionable individual. His counsel claimed the former suit never proceeded to trial and the allegations therein were unproven, unverified, and had no bearing on the instant matter. The trial court noted the objection and allowed the former suit record to be entered into evidence. The trial court stated that it would "apportion the appropriate weight to evidence."

As a general rule, trial courts are afforded great discretion concerning the admission of evidence, and their decisions to admit or exclude evidence should not be reversed on appeal in the absence of an abuse of their discretion. *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So.2d 706. When reviewing such alleged errors, we must determine whether the complaining party has shown that the ruling complained of "was erroneous and whether the error prejudiced the defendant's cause, for unless it does, reversal is not warranted." *State in Interest of A.S.*, 19-248, p. 15 (La.App. 1 Cir. 9/4/19), 285 So.3d 1129, 1141. "Prejudicial error 'affects the final result of the case and works adversely to a substantial right of the party assigning it.'" *Johnson v. Tucker*, 51,723, p. 11 (La.App. 2 Cir. 11/15/17), 243 So.3d 1237, 1243, *writs denied*, 17-2075, 17-2073 (La. 2/9/18), 236 So.3d 1262, 1266. The reviewing court must determine "whether the error, when compared to the entire record, has a substantial effect on the outcome of the case, and it is the complainant's burden to prove." *Id*.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. In Louisiana, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not

8

admissible." La.Code Evid. art. 402. Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." La.Code Evid. art. 404(B). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident[.]" *Id.*

On review, the other suit was filed by a woman against Matthew and his employer, New Horizons Counseling Center, LLC. The petition alleges that the woman was Matthew's client and was seeking help for her past abusive and dysfunctional relationships, including emotional and physical abuse. According to the petition, Matthew pursued a sexual relationship with his client. A short time after sexual intercourse, the petition asserts that Matthew broke off the relationship.

We find that the trial court did not abuse its discretion in allowing the other suit into evidence because it is relevant by showing a pattern of abuse and similar conduct. This is especially true in light of Rowena's trial testimony that Matthew has a history of inappropriate relationships with his clients and uses his status as a mental health counselor to gain an advantage over patients or former patients with mental issues. Notably, Rowena testified that Matthew was having an inappropriate relationship with a former client, Christi Jeffels, who also testified at trial on Matthew's behalf. Rowena further testified that she (Rowena) had mental issues which allowed Matthew to prey on her, considering his employment as a mental health professional. Moreover, even if the admission of the suit had been an error, it did not have a substantial effect on the outcome of the case, given the other evidence and testimony in the record supporting Rowena's domestic abuse claim. Thus, any error would be harmless. Accordingly, Matthew's assignment of error is meritless,

9

## C.     New Horizons Documents

During Matthew's testimony, Rowena's counsel attempted to question him pertaining to a document identified as the Declarations of Practices and Procedures from New Horizons Counseling Center, LLC.  Matthew testified that he has been employed as a mental health therapist at New Horizons for the past seven or eight years.  During trial, Rowena's counsel explained that the document has been "publicly displayed on [Matthew's] web page, and it relates to his treatment of his patients, one of which he has brought with him to court today [i.e., Christi], that is essential and relevant to a lot of the incidents of abuse."  Rowena's counsel noted that Matthew's former patient, Christi, witnessed "one of the incidents, and she has been at the crux of" many of the issues presented at trial.

Matthew's counsel objected to the relevance of the document and argued it would only be relevant if Rowena alleged that she was Matthew's former client.  The trial court admitted these documents into evidence as "P-2" over the objection of counsel.

We find that the trial court did not abuse its discretion in admitting this evidence.  At trial, Matthew agreed the document was displayed on his web page and explained that it was a Declaration of Practices and Procedures which every client must sign.  We find that the document could have been admitted to elicit testimony to show that Matthew may have been having an inappropriate relationship with his former client, Christi.  Christi testified at trial on Matthew's behalf. Additionally, testimony reveals that Christi was the subject of many of Matthew and Rowena's fights which resulted in Rowena's alleged abuse.  Christi witnessed one of these incidents according to testimony in the record.  Moreover, even if the admission of the suit was an error, it did not have a substantial effect on the outcome of the case given the other evidence and testimony in the record supporting

Rowena's claim of domestic abuse. Thus, any error would be harmless. Accordingly, Matthew's assignment of error is meritless with respect to the introduction of this evidence.

### D. Uncertified Medical Records

Matthew claims the trial court erred by admitting into evidence uncertified medical records from Compass Counseling, L.L.C. offered by Rowena as exhibit "P-5". Matthew asserts that the medical records should not have been admitted into evidence because no medical records custodian appeared as a representative of Compass Counseling to authenticate these records, and no treating physician appeared to testify about the referenced treatment. Matthew's counsel claims he was unable to review these records because they were illegible. Matthew argues that the records are hearsay, unauthentic, and should not have been admitted into evidence

"'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). "Hearsay is not admissible except as otherwise provided by this Code or other legislation." La.Code Evid. art. 802. There are exceptions to the hearsay rule found in La.Code Evid. art. 803, as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) **Statements for purposes of medical treatment and medical diagnosis in connection with treatment.** Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.

Another hearsay exception found in La.Code Evid. art. 803(6) relates to records of regularly conducted business activity, and includes:

11

A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in the circumstances under which the statement would not be excluded by the hearsay rule.

On review, these records show that Rowena underwent mental health counseling in May and June of 2019 from Jodi Underwood at Compass Counseling in Lake Charles. At trial, Rowena reviewed the records and explained that she presented to Jodi six times during that period. Rowena testified that they discussed jealousy, anger, and domestic violence. Rowena agreed that the fifth page of the document was created by her wherein she checked the following boxes which indicated the ailments she was seeking help for: anxiety, depression, stress, problem within the family, domestic violence, and anger issues. When introducing the records into evidence, Rowena's counsel acknowledged that part, but not all, of the packet was created by Rowena. Rowena's counsel advised, however, that the records were obtained directly from Compass Counseling through a records request and were filed in the regular business filings. The trial court noted the objection for the record and allowed it into evidence as exhibit "P-5," explaining that "this document will be considered and given the appropriate weight."

In this case, the trial court could have found that the Compass Counseling records were admissible under La.Code Evid. art. 803(6) relating to records of regularly conducted business activity. The trial court also could have found the records were admissible under La.Code Evid. art. 803(4) relating to statements made

for the purpose of medical treatment and diagnosis in connection with treatment. The trial court's findings are reasonable in light of Rowena's testimony that she checked the boxes indicating her ailments. Moreover, there is nothing in the record on review which shows the lack of trustworthiness of the source of the information. Accordingly, Matthew's assignment of error is meritless with respect to the introduction of this evidence.

### E. Pictures of Clothes

At trial, Rowena offered into evidence three pictures of different items of clothing that she allegedly found when she returned home after the granting of the temporary restraining order. Rowena claimed that these clothes were set out by Matthew to cause her emotional abuse. Because Rowena alleged that the clothing represented emotional abuse, Matthew's counsel objected to the introduction of the pictures as being outside the scope of Rowena's petition. Matthew's counsel noted that emotional abuse was not asserted in Rowena's petition or supplemental petition. The trial court allowed introduction of the pictures and testimony regarding same.

At trial, Rowena testified that the clothes in the pictures belonged to Christi. Rowena believed Matthew had intentionally placed them out for her to see after the signing of the temporary restraining order because it would trigger her jealousness. Christi, however, refuted Rowena's testimony when she [Christi] clarified at trial that none of the clothes belonged to her. Matthew testified that the clothes probably belonged to his deceased mother. Matthew explained that upon returning home after the granting of the temporary restraining order, he was accompanied by a police officer who was present at all times. Matthew denied placing the clothes on the bed or instructing any third person to do the same.

In this case, we find that the trial court did not abuse its broad discretion in allowing the photos. Moreover, even if the trial court's ruling was erroneous, when

compared to the entire record, it does not have a substantial effect on the outcome of the case. *See Johnson v. Tucker*, 243 So.3d 1237. Accordingly, Matthew's assignment of error is meritless with respect to the introduction of this evidence.

## III. Third Assignment of Error

In his third assignment of error, Matthew contends the trial court committed error in granting the protective order based upon the incidents enumerated in Rowena's application. Matthew claims that, on the three occasions when Rowena alleges the domestic abuse occurred, he was merely defending his property, defending himself, or defending a third person. He further claims that Rowena was the instigator in all three occasions. Thus, Matthew alleges that he did not commit any act of domestic abuse as defined under La.R.S 46:2132.

In Louisiana, domestic abuse pursuant to La.R.S 46:2132(3) "includes but is not limited to physical or sexual abuse and any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." Rowena's petition and testimony claim that Matthew abused her on three different occasions: February 3, 2019, March 6, 2019, and May 27, 2019. Testimony in the record further reveals another incident occurred on February 23, 2019. Notably, Matthew's trial testimony reveals that he is a licensed professional mental health counselor who works with women who have been past victims of domestic violence.

### A. February 3, 2019

In her petition, Rowena alleged the parties were verbally arguing on February 3, 2019, when Matthew pushed her and caused her to fall on the floor. Rowena's trial testimony reveals that Matthew returned to their home on the evening in question when they began fighting because he had been at Christi's house watching

14

movies. Rowena claimed that during their argument, Matthew began playing an online game with Christi. At that point, Rowena picked up the computer mouse and threw it on the floor, "not to[wards] him." She alleged that Matthew subsequently picked her up by both of his hands and threw her on the floor, landing on her bottom. Rowena noted Matthew told her she merely tripped. Rowena stated that she called 911 but hung up because she did not want to make things worse. She claimed Matthew subsequently called 911, and Rowena spoke to the police. Recorded 911 calls were entered into evidence at trial.

Matthew's testimony reveals that on the date in question, Rowena threw a phone and a mouse next to his computer which was located on top of a glass coffee table. Matthew explained that he was concerned Rowena was going to hurt herself. As a result, he stated that the following occurred: "I just put my arms next to hers and kind of turned us so that I was between her and all the glass stuff." Matthew acknowledged that Rowena called the police and hung up. He said that the police called back and units were dispatched to the home. Matthew noted that they spoke to the police, and he was not arrested. Matthew's counsel introduced into evidence police body camera videos.

### B. February 23, 2019

Rowena testified that she and Matthew were in their master bedroom when they started arguing about Christi. She alleged that Matthew pushed her with both of his hands out of the bedroom. Rowena explained that she left their home that night because she was scared of Matthew. Rowena entered into evidence an audio recording of the couple.

Matthew's testimony reveals that he was walking forward and yelling at Rowena while she backed up towards the bedroom door. Matthew claims that when Rowena reached the door, she began struggling to stay in. At that point, Matthew

15

tried to shut the door but failed to realize that Rowena's hands were in the doorway. Matthew claimed this was an accidental incident and that he never made intentional physical contact with Rowena.

## C.    March 6, 2019

In her petition, Rowena claimed that she attempted to enter the home when Matthew blocked her access to the door.  At trial, Rowena testified that she was physically harmed when she went to their home.  She explained that she wanted to speak to Christi, who was staying with Matthew at the marital home.  Rowena advised that when she attempted to open the house door, Matthew blocked her from entering by pushing the door from the other side.  She eventually entered the home and proceeded to the master bedroom to confront Christi when Matthew grabbed Rowena.  Rowena claimed Matthew dragged her along the hallway and pinned her down to the floor.  He allegedly held her down with both of his hands and dragged her outside.  Rowena claims that Matthew pinned her down, causing her left cheek to hit the floor.  Matthew allegedly twisted her arms and stepped on her back. Rowena explained that Matthew placed his left hand on the back of her neck when she began yelling that she could not breathe.  According to Rowena's testimony, Matthew eventually opened the door and threw her outside.  During this incident, Rowena claimed that she called Christi bad names although she never threatened to physically harm her.  Rowena revealed that she never called the police regarding the incident.  However, she returned the couple's car to the residence later that day when she was confronted by police, who told her she was trespassing.  Police records were entered into evidence at trial.

The following day after the alleged incident, Rowena took photographs of her body.  These pictures, which reveal bruises on various parts of her body, were attached to her petition and entered into evidence at trial.  Rowena also testified that

she sought medical treatment two days later at Lake Charles Urgent Care. The medical records, which are dated March 8, 2019, and were entered into evidence at trial, reveal that Rowena was diagnosed with having soft bruises on her body. A text message between Rowena and Matthew, also entered into evidence, reveals Rowena sent Matthew a picture of her bruises after which Matthew responded, "Ok. And?"

Matthew's testimony reveals that the doorbell rang on the morning in question. He opened the door where he saw Rowena, who was cursing about Christi. He testified that Rowena made her way inside and proceeded to the master bedroom where Christi was hiding. He acknowledged that Rowena was unable to enter the master bedroom, although she kicked and punched the door. Matthew was scared that Rowena and Christi would get into a fight and decided to move Rowena. At that point, Matthew stated that he grabbed Rowena by the arms and pulled her towards the front door. Matthew brought her outside and "let her go" where Rowena probably fell. He never choked her, stepped on her back, or twisted her arms. Matthew advised that Christi called the police, who showed up. Matthew's counsel introduced into evidence police body camera videos.

Christi's trial testimony confirms that she called police on the day in question. Christi acknowledged that she is Matthew's former client, and the two have become friends since their professional relationship ended. Christi, a nurse who lives in Moss Bluff, explained that she sometimes stays at Matthew's house because it is located closer to her patients than her house.

### D.     May 27, 2019

According to Rowena's petition and trial testimony, the couple was at home when they began arguing about Christi. Rowena was angry because Matthew was with Christi earlier that day. Rowena revealed that she grabbed Matthew's phone with her right hand. Rowena testified that she never hit Matthew's arm or hand when

17

she grabbed his phone. According to Rowena, Matthew subsequently stood up and pushed her, causing her to fall into the furniture.

Matthew acknowledged that he had been watching movies at Christi's house earlier in the day. This was confirmed by Christi's testimony. Matthew testified that as he was leaving Christi's house, he saw Rowena and her daughter pass in another vehicle. Thereafter, the parties returned to the marital home when Rowena and Matthew began arguing in the living room. Matthew stated that Rowena removed his cell phone from his hand without his permission. He explained that he subsequently reached forward with his right hand and retrieved his phone from Rowena while holding out his left arm. Matthew stated that Rowena subsequently sat down in the loveseat behind her.

After considering the foregoing testimony and evidence, along with jurisprudence, the trial court held that a caustic relationship existed between Rowena and Matthew which resulted in non-consensual physical touches. The trial court granted the protective order and use of the home to Rowena pending further proceedings.

Our review of the record reveals that the trial court found Rowena's testimony more credible than Matthew and Christi's testimony, and there is nothing in the record to contradict its finding. Accordingly, the trial court's finding is not manifestly erroneous in this regard.

Matthew further claims that during the March 6, 2019 incident, he was acting in self-defense pursuant to La.R.S. 14:19, such that his acts should not be considered domestic abuse. Pursuant to La.R.S. 14:19, the use of force or violence upon the person of another is justifiable in certain circumstances. In a non-homicide case, the defendant must carry the burden of proving self-defense by a preponderance of the evidence. *State v. Perkins*, 527 So.2d 48 (La.App. 3 Cir. 1988). In a non-homicide

case, the issue of self-defense "requires a dual inquiry: (1) an objective inquiry into whether the force used was reasonable under the circumstances; and (2) a subjective inquiry into whether the force was apparently necessary." *Id.* at 50.

In the case before us, the evidence presented at trial demonstrates that Matthew suffered little or no injury as a result of the March 6, 2019 incident. On the other hand, Rowena introduced medical records and photographs demonstrating her injuries which resulted from the incident. In light of the evidence presented, we find that the trial court could have reasonably found that Matthew did not act in self-defense. Accordingly, the trial court did not abuse its discretion, and this assignment of error is without merit.

## IV.  Fourth Assignment of Error

In his fourth assignment of error, Matthew contends that the trial court committed error and abused its discretion by awarding Rowena the exclusive use of Matthew's separate property residence for an eighteen-month period pursuant to the granting of the protective order. In support, Matthew cites La.R.S. 46:2136(A), which provides:

> The court may grant any protective order or approve any consent agreement to bring about a cessation of domestic abuse as defined in R.S. 46:2132, or the threat or danger thereof, to a party, any minor children, or any person alleged to be incompetent, which relief may include but is not limited to:

> (2)   Where there is a duty to support a party, any minor children, or any person alleged to be incompetent living in the residence or household, ordering payment of temporary support or provision of suitable housing for them, or granting possession to the petitioner of the residence or household to the exclusion of the defendant, by evicting the defendant or restoring possession to the petitioner where the residence is solely owned by the defendant and the petitioner has been awarded the temporary custody of the minor children born of the parties.

According to Matthew, a petitioner can only be granted the exclusive possession of a defendant's separately owned property under La.R.S. 46:2136(A)(2) when the

petitioner has been awarded temporary custody of the minor children born of the parties. Because Rowena and Matthew have no children together, he claims the trial court abused its discretion in awarding Rowena exclusive possession.

Matthew further asserts that the only case cited by Rowena in her amended petition to support her contention that La.R.S. 46:2136(A)(2) is applicable, i.e., *Beard v. Beard*, 917 So.2d 1160 (La.App. 5 Cir. 11/29/05), is factually distinguishable from the instant matter. In *Beard*, Mrs. Beard was granted a temporary restraining order against Mr. Beard which included the use of the matrimonial domicile. Mr. Beard filed an ex parte motion to vacate the temporary restraining order, arguing that the matrimonial domicile was his separate property and that Mrs. Beard misled the court in her petition by stating that she was the sole owner. The trial court maintained the domestic abuse order and granted Mrs. Beard use and possession of the residence until August 24, 2006. On appeal, and with respect to the order granting Mrs. Beard use of family home, Mr. Beard claimed that La.R.S. 46:2136(A)(2) provided that an order granting a party use of the separate property of the other spouse may be issued only if the petitioner had been awarded temporary custody of the parties' minor children.[2] The fifth circuit affirmed the trial court's judgment.

In his brief, Matthew claims *Beard* is inapplicable because Mr. Beard testified that he did not mind Mrs. Beard living in the house whereas in this matter, Matthew does not want Rowena living in the house. Although the fifth circuit noted the foregoing testimony as one of its reasons in affirming the trial court's judgment, that

---

[2] Our reading of *Beard,* 917 So.2d 1160, reveals that Mrs. Beard has a daughter named Sandra Rivere who used to live rent free in one of Mr. Beard's mobile homes. However, there is no information in the opinion as to Sandra's age and whether Mr. Beard is Sandra's father. Moreover, there is no information in the opinion as to whether Mr. and Mrs. Beard actually had any children together.

was not the sole reason. *Beard*, 917 So.2d 1160. Rather, the fifth circuit noted that the trial court found Mrs. Beard's testimony was more credible than Mr. Beard's testimony, and there was nothing in the record to contradict such a finding. Importantly, the fifth circuit stated:

> The wording of LSA-R.S. 46:2136 makes it clear that the court is not limited to the enumerated relief. The legislature apparently fashioned the statute thus in order to permit the court to tailor relief to the circumstances of the case. Under the facts presented here, we find the decision by the trial court to award occupancy of the family home to Mrs. Beard is a protective order which results in the cessation of systematic psychological abuse by her husband.

*Id*. at 1163. Thus, Matthew's claim that *Beard* is inapplicable to this case is without merit.

Rather, we find the trial court's reliance on *Beard* is appropriate. The trial court in this case, just as in *Beard*, found Rowena's testimony more credible than Matthew's testimony, and there is nothing in the record to contradict such a finding. Just as in *Beard*, the trial court in this matter recognized that it was not limited to the enumerated relief provided in La.R.S. 46:2136. Similar to *Beard*, the trial court in this case recognized that La.R.S. 46:2136 was fashioned in order to enable the court to tailor relief to the circumstances of the case. Under the facts presented here, we find the decision by the trial court to award occupancy of the residence to Rowena is a protective order which results in the cessation of abuse by Matthew. Accordingly, the trial court did not abuse its discretion in this regard, and Matthew's assignment of error is without merit.

## V. Fifth Assignment of Error

In his fifth assignment of error, Matthew contends the trial court committed error by awarding attorney fees to Rowena. Alternatively, he contends the trial court committed error by awarding an unreasonably high amount of attorney fees.

21

According to the record on review, the trial court awarded attorney fees to Rowena pursuant to the granting of the protective order. Rowena's counsel was instructed to submit an affidavit indicating the amount of attorney fees incurred. Matthew filed an opposition to the affidavit of attorney fees. The trial court subsequently signed an order awarding Rowena $15,500.00 in attorney fees.

A "trial court's award of attorneys' fees should not be modified absent an abuse of discretion." *D.M.S. v. I.D.S.*, 14-364, p. 25 (La.App. 4 Cir. 3/4/15), 225 So.3d 1127, 1143, *writ denied*, 15-897 (La. 6/19/15), 172 So.3d 654. In this case, the trial court's award was granted pursuant to the Domestic Abuse Assistance Act, La.R.S. 46:2136.1(A), which provides:

> All court costs, attorney fees, costs of enforcement and modification proceedings, costs of appeal, evaluation fees, and expert witness fees incurred in maintaining or defending any proceeding concerning domestic abuse assistance in accordance with the provisions of this Part shall be paid by the perpetrator of the domestic violence, including all costs of medical and psychological care for the abused adult, or for any of the children, necessitated by the domestic violence.

The statute clearly awards all attorney fees incurred, including the costs of appeal, in maintaining or defending a proceeding concerning domestic abuse assistance which must be paid by the perpetrator. In this case, the perpetrator is Matthew. Thus, the trial court properly awarded attorney fees in light of the statute. We find no abuse of the trial court's discretion, and this assignment lacks merit.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. All costs associated with this appeal are assessed to Defendant/Appellant, Matthew Wayne McCauley.

**AFFIRMED.**

22